UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
KHAWAR MAQSOOD,                          :
                                         :
                     Plaintiff,          :
                                         :
                                         :   10 Civ. 8943(PGG)(THK)
                                         :
        -against-                        :
                                         :   **REPORT AND RECOMMENDATION**
                                         :   <u>Pro</u> <u>Se</u>
MICHAEL J. ASTRUE,                       :
COMMISSIONER OF SOCIAL SECURITY,         :
                                         :
                     Defendant.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
TO:   HON. PAUL G. GARDEPHE, UNITED STATES DISTRICT JUDGE.
FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.

Khawar Maqsood ("Plaintiff") commenced this action pursuant to
42 U.S.C. § 405(g) to obtain judicial review of the Commissioner of
Social Security's calculation of Plaintiff's disability insurance
benefits.  Defendant, the Commissioner of Social Security ("the
Commissioner"), has moved for judgment on the pleadings pursuant to
Rule 12(c) of the Federal Rules of Civil Procedure, and Plaintiff
has moved for summary judgment.  These motions were referred to
this Court for a Report and Recommendation in accordance with 28
U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(a) of the Local Civil
Rules of the Southern District of New York.  For the reasons that
follow, the Court recommends that Plaintiff's motion for summary
judgment be denied, the Commissioner's motion be granted, and
Plaintiff's action be dismissed with prejudice.

**BACKGROUND**

COPIES MAILED
TO COUNSEL OF RECORD ON  1/27/12

I.   <u>Factual and Procedural Background</u>

Plaintiff was injured "on the job" on June 30, 2004.  (<u>See</u> Complaint ("Compl.") at 1 ¶ A1).  Three weeks later, on July 22, 2004, Plaintiff suffered multiple heart attacks.  (<u>See</u> <u>id.</u>) On August 10, 2004, Plaintiff filed an application for disability insurance benefits with the Social Security Administration ("SSA"). (<u>See</u> Application for Disability Insurance Benefits, attached as Exhibit A ("Ex. A") to Plaintiff's Motion for Summary Judgment ("Pl.'s Mot.") at 1.)  In his application, Plaintiff explained that he "became unable to work because of [his] disabling condition on July 22, 2004" and that he is "still disabled."   (<u>See</u> <u>id.</u>) Plaintiff also stated that he had "reviewed [the SSA's] record of [his] earnings and [he] agree[s] with the amount posted."  (<u>See</u> <u>id.</u>)

The SSA initially denied Plaintiff's application, and, on February 23, 2005, Plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (<u>See</u> Administrative Record ("Rec.") at 29.)   In his request, Plaintiff provided more information about his claimed disability, explaining that he was undergoing treatment for dizziness and a heart condition.  (<u>See</u> <u>id.</u>) On July 25, 2005, the ALJ issued a decision "fully favorable" to Plaintiff (<u>see</u> <u>id.</u> at 27-29), finding that Plaintiff suffered from "severe impairments," including lower back pain, dizziness,

2

and chest pain, and, as a result, "is unable to perform more than sedentary work, if any." (SSA, Office of Hearings and Appeals Decision, attached as Ex. C to Pl's Mot. at 2). The ALJ continued, "[Plaintiff] cannot lift or carry more than 10 pounds, stand and walk for more than a total of 2 hours in an eight-hour weekday . . . [Plaintiff] is unable to perform his former work as a security guard and doorman because both jobs required more than sedentary work activities." (Id.) The ALJ found Plaintiff disabled based on his medical condition, age, education, and work experience.[1]  (See id. at 2-3.) The ALJ found that Plaintiff was disabled as of July 22, 2004, and was, therefore, entitled to disability insurance benefits based on his August 10, 2004 application. (See id. at 3.)

Before receiving the ALJ's decision, Plaintiff applied for Supplemental Security Income (SSI). (See Compl. ¶ A9.) Plaintiff received a single SSI payment of $653.00 in June 2005. (See id.)

On August 29, 2005, the SSA issued a Notice of Award informing Plaintiff that, effective January 2005, Plaintiff was entitled to monthly disability insurance benefit payments in the amount of $644.00. (See Rec. at 30-33.) This notice mistakenly stated that Plaintiff was entitled to retroactive disability insurance benefits

---

[1]Plaintiff, born on August 10, 1947, was 57 years old at the time he became disabled, making Plaintiff of "advanced age." (See Notice of Decision at 3.)

in the amount of $45,080.00 for the period from January 2005 to July 2005. (See id. at 31.)  On December 3, 2005, the SSA sent Plaintiff a letter and corrected its earlier error, explaining that the retroactive amount was actually $4,580.00, and that $1,127.00 would be deducted from that amount to pay Plaintiff's lawyers, and $653.00 would deducted as the amount Plaintiff received in SSI, which must be deducted pursuant to a Windfall Offset Provision. (See id. at 34.)

Plaintiff then requested that the SSA re-figure his monthly benefits. (See id. at 37.)  The SSA reviewed Plaintiff's work history through 2006 and determined that Plaintiff was receiving the "highest possible amount based on how much [he] earned." (Id.) On August 16, 2006, Plaintiff filed a second request for reconsideration, explaining that he was "very sick and on many medications" and that he disagreed with the SSA's determination that he was receiving the maximum possible benefits. (Id. at 39.) On December 20, 2006, Plaintiff was notified that he had not requested reconsideration within 60 days of the notice dated August 29, 2005. (See id. at 60.)  On January 30, 2007, Plaintiff filed a request for a hearing before an ALJ, explaining that he disagreed with the determination of his claim because he "[has] not received both disability checks (Baltimore and Social Security disability). [He] file[d] a reconsideration on August 16, 2006 on time and it

4

was den[ied]. [He is] sick . . . cannot work . . .[and] had two heart attacks." (<u>Id.</u> at 24.)

On July 3, 2007, Plaintiff filed a civil action against the Commissioner in the Southern District of New York. (<u>See</u> <u>id.</u> at 46.) The SSA denied Plaintiff's request for a hearing on November 6, 2007, finding that it lacked jurisdiction given that Plaintiff had filed a claim in federal court. (<u>See</u> <u>id.</u> at 40-42.) Plaintiff's civil action was dismissed on January 28, 2009 for lack of jurisdiction, as there had been no "final decision by the Commissioner." (<u>See</u> <u>id.</u> at 62-63.) In the dismissal, the court pointed out that the SSA had never responded to Plaintiff's request for reconsideration dated August 16, 2006, and directed the SSA to review the request. (<u>See</u> <u>id.</u> at 63.)

Prior to the dismissal of the civil action, on November 19, 2007, the SSA reviewed Plaintiff's request for reconsideration and found that Plaintiff's benefits were correctly calculated. (<u>See</u> <u>id.</u> at 48-54.) On April 25, 2008, Plaintiff filed a "Request for Review of Hearing Decision/Order" with the SSA Office of Hearing and Appeals. (<u>See</u> <u>id.</u> at 77.) Plaintiff attached a letter to his request explaining the history of his case and his disability. (<u>See</u> <u>id.</u> at 78-80.) On May 2, 2008, the Appeals Council requested additional information from Plaintiff to explain his failure to timely appeal the dismissal of his request for consideration. (<u>See</u>

5

id. at 75.)   Plaintiff responded with a letter explaining his disability and the fact that he lacked a lawyer, but did not offer any concrete explanation for the delay.  (See id. at 75-76.)

On June 13, 2008, the Appeals Council granted Plaintiff's request for review, vacating the November 19, 2007 hearing decision and remanding the case to an ALJ for further proceedings, including a hearing and a decision.  (See id. at 83.)  The Appeals Council ordered the ALJ to "address issues involving whether the Social Security Administration computed his retroactive disability insurance benefits, as well as his ongoing monthly benefits, correctly."  (Id.)

Following the Appeals Council's decision, a hearing was held before ALJ Newton Greenberg, on October 29, 2008, to determine if Plaintiff was receiving disability benefits in the correct amount. (See id. at 178-88.)  Plaintiff testified at the hearing, at which he appeared unrepresented.  (See id.)  On February 13, 2009, ALJ Greenberg issued a decision that was unfavorable to Plaintiff. (See id. at 6-8.)  ALJ Greenberg found that Plaintiff became entitled to disability insurance benefits in January 2005; the SSA correctly computed the retroactive disability insurance benefits due for January 2005 through July 2005; and the monthly benefit amount was computed correctly based on Plaintiff's earning record, date of birth, and month of entitlement to benefits.  (See id. at

6

13.)  On October 26, 2010, the Appeals Council denied Plaintiff's request for review, and the decision of ALJ Greenberg became the Commissioner's final decision.  (See id. at 2-5.)  Plaintiff then filed the present action.

## DISCUSSION

Plaintiff seeks review of the SSA's calculation of his retroactive disability benefits and his monthly disability benefits.  Plaintiff's primary contentions in the Complaint and motion for summary judgment appear to be that the SSA did not use the correct values for Plaintiff's wages when calculating benefits (see id. at 183; Compl. at 2 ¶ A3); that he is entitled to additional retroactive benefits; and that the SSA calculated his benefits pursuant to the wrong statute (see Pl.'s Mot. at 3-4).[2]

I.   Legal Standard

     A.   Judicial Review Pursuant to 42 U.S.C. § 405(g)

This Court reviews the administrative record and the ALJ's decision to determine whether it is supported by substantial evidence and relies upon the correct legal standards.  See 42

---

[2] Plaintiff asserts numerous other claims, including that the SSA engaged in fraud, destroyed his folder, and violated his constitutional rights by having security guards remove Plaintiff from a SSA district office.  (See Pl.'s Mot. at 3-7.)  These claims have not been substantiated, and the Court's review in this proceeding is limited to whether the Commissioner's benefits decision is supported by substantial evidence.

7

U.S.C. § 405(g); <u>Pollard v. Halter</u>, 377 F.3d 183, 188 (2d Cir. 2004). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)) (internal quotations omitted). Where an ALJ's findings are based on substantial evidence, this Court must defer to them. <u>See</u> <u>Barreto ex rel. Rivas v. Barnhart</u>, No. 02 Civ. 4462 (LTS), 2004 WL 1672789, at *3 (S.D.N.Y. July 27, 2004) (citing <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); <u>Morales v. Barnhart</u>, 218 F. Supp. 2d 450, 458 (S.D.N.Y. 2002); 42 U.S.C. § 405(g)). A court "may not properly 'affirm an administrative action on grounds different from those considered by the agency.'" <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008) (quoting <u>Melville v. Apfel</u>, 198 F.3d 45, 52 (2d Cir. 1999)). "[A]s the propriety of the agency's action is to be judged solely by the rationale it advances, 'that basis must be set forth with such clarity as to be understandable. It will not do for a court to . . . guess at the theory underlying the agency's action . . . .'" <u>NLRB v. Columbia Univ.</u>, 541 F.2d 922, 930 (2d Cir. 1976) (quoting <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196-97, 67 S. Ct. 1575, 1577 (1947)); <u>accord</u> <u>Ryan v. Heckler</u>, 762 F.2d 939, 941 (11th Cir. 1985) ("We cannot, however, conduct a review that is both limited and

8

meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.").

B.   Computation of Disability Insurance Benefits

Under the Social Security Act, a statutory formula is used to determine an individual's disability insurance benefits, which the statute refers to as the "primary insurance amount." See 42 U.S.C. § 415 (2006).  For claimants who, like Plaintiff, attain age sixty-two or become disabled after 1978, the Average Indexed Monthly Earnings ("AIME") method is used to calculate insurance benefits. See 20 C.F.R. § 404.204(b)(1).  Calculating a claimant's primary insurance amount based on the claimant's AIME is a multi-step process.

1.   Determining the Benefit Computation Years

To determine which years of earnings will be used to calculate an individual's primary insurance amount, the SSA must first find the individual's "benchmark" year, defined as the year in which an individual turns sixty-two or becomes disabled, whichever is earlier.   See 42 U.S.C. § 415(b)(2)(B)(iii); 2A Soc. Sec. Law & Prac. § 23.9 (2011).  Here, Plaintiff became disabled in July 2004, making 2004 the benchmark year.   The benchmark year is used to calculate the claimant's "elapsed years," the calendar years beginning with 1951 or the year the claimant turned 21, whichever

9

is later, and ending with the year before the benchmark year. See 42 U.S.C. § 415(b)(2)(B)(iii); 20 C.F.R. § 404.211(e)(1). A claimant's elapsed years have no relation to his actual earnings years. Here, Plaintiff turned 21 in 1969, and the year before the benchmark year is 2003, resulting in 35 elapsed years for Plaintiff. A claimant's actual years of earnings are called his "benefit computation years," which are used to compute the primary insurance amount. See 42 U.S.C. § 415(b)(2)(A)-(B); 20 C.F.R. § 404.211(e)(1). A claimant's "benefit computation years" are equal to the number of elapsed years reduced by one-fifth of the elapsed years, but no more than five years. See 42 U.S.C. § 415(b)(2)(A)(ii). When reducing the computation years, the SSA is to eliminate the claimant's lowest earning years. See 20 C.F.R. § 404.221(c)(3). Here, Plaintiff has 35 elapsed years. Since one-fifth of thiry-five is greater than five, Plaintiff's elapsed years are reduced by five, and he has thirty benefit computation years.

    2.   Calculating the AIME

To determine a claimant's AIME, the SSA must first identify a claimant's indexing year. The indexing year is the year two years before the claimant turned sixty-two or became disabled. 42 U.S.C. § 415(b)(3)(A)(ii)(I). In the instant case, Plaintiff became disabled in 2004, and the indexing year is 2002. Next, the National Average Wage Index must be consulted for the indexing

10

year.  This index is published yearly in the Federal Register and

is available on the SSA's website.  See National Average Wage

Index, available at http://www.ssa.gov/oact/COLA/AWI.html#Series.

The index provides the average total wages for American workers for

each year.  For each computation base year, an individual's indexed

earnings are determined by: (1) calculating the ratio of the

average total wages for the indexing year to the average total

wages for the year in question, and (2) multiplying that ratio by

the individual's actual wages for the year in question.[3]  See 20

_____

  [3] The chart below contains these calculations for Plaintiff.
The calculations for the years 1968 through 1984 have been
omitted, as Plaintiff earned no wages during that period.

| Year | Plaintiff's Wages | Average Wages for All American Workers | Ratio of Average Total Wages for the Indexing Year ($33,252.09) and the Average Wages for the Year in Question | Product of Indexed Wage Ratio and Plaintiff's Wages |
|---|---|---|---|---|
| 1985 | 5536.95 | 16,822.51 | 1.976643 | 10944.57 |
| 1986 | 10165.39 | 17,321.82 | 1.919665 | 19514.14 |
| 1987 | 18024.93 | 18,426.51 | 1.804579 | 32527.41 |
| 1988 | 23754.00 | 19,334.04 | 1.719873 | 40853.86 |
| 1989 | 21230.93 | 20,099.55 | 1.65437 | 35123.81 |
| 1990 | 10469.62 | 21,027.98 | 1.581326 | 16555.88 |
| 1991 | 4641.40 | 21,811.60 | 1.524514 | 7075.879 |
| 1992 | 384.00 | 22,935.42 | 1.449814 | 556.7285 |
| 1993 | 6294.39 | 23,132.67 | 1.437451 | 9047.88 |
| 1994 | 6999.75 | 23,753.53 | 1.39988 | 9798.81 |
| 1995 | 3035.16 | 24,705.66 | 1.34593 | 4085.113 |
| 1996 | 13439.71 | 25,913.90 | 1.283176 | 17245.51 |
| 1997 | 12593.13 | 27,426.00 | 1.212429 | 15268.28 |
| 1998 | 13559.13 | 28,861.44 | 1.152129 | 15621.86 |
| 1999 | 12279.18 | 30,469.84 | 1.091312 | 13400.41 |
| 2000 | 21144.23 | 32,154.82 | 1.034125 | 21865.77 |
| 2001 | 13219.52 | 32,921.92 | 1.010029 | 13352.1 |
| 2002 | 4940.63 | 33,252.09 | 1 | 4940.63 |
| 2003 | 8203.52 | 34,064.95 | 0.976138 | 8007.767 |
| 2004 | 11068.76 | 35,648.55 | 0.932775 | 10324.67 |

11

C.F.R. § 404.211(d). Once the claimants's indexed earnings have been determined for each of his benefit computation years, these earnings must be totaled and divided by the number of months in the benefit computation years. See 20 C.F.R. § 404.211(f). The resulting quotient is rounded to the next lowest whole dollar, if not a multiple of one, and provides the claimant's AIME. See id.

3.  Calculating the Primary Insurance Amount

A claimant's primary insurance amount is then calculated according to a statutory formula. See 42 U.S.C. § 415 (a)(1). Based on the claimant's benchmark year, different dollar values are substituted into the formula. These dollar values are used to represent "bend points" in the formula. Here, Plaintiff's benchmark year is 2004, the year in which he became disabled. The SSA releases the "bend points" for each year in the Federal Register and provides a comprehensive chart of yearly "bend points" on its website. See Benefit Formula Bend Points ("Benefit Forumla Bend Points"), available at http://www.ssa.gov/oact/COLA/bendpoints.html. Substituting in the bend points for Plaintiff's benchmark year, 2004, the formula for calculating his primary insurance amount is the sum of: (1) 90% of Plaintiff's AIME up to $612.00; (2) 32% of Plaintiff's AIME above

$612.00 and below $3,689.00; (3) 15% of Plaintiff's AIME above $3,689.00. See 42 U.S.C. § 415 (a)(1); Benefit Formula Bend Points.

4.   Applying Cost of Living Adjustments

After an individual's primary insurance amount is calculated, cost of living adjustments must be made each year.  Each October, the SSA releases the cost of living adjustment for that year, which the SSA applies to the individual's benefits beginning in December. See 20 C.F.R. §§ 404.270-71; Cost of Living Adjustments ("Cost of Living Adjustments"), available at http://www.ssa.gov/oact/COLA/colaseries.html (describing the cost of living adjustment and providing the cost of living adjustment rate for each year since 1975).  The cost of living adjustments were 2.7 in 2004, 4.1 in 2005, 3.3 in 2006, 2.3 in 2007, 5.8 in 2008, and 0 in 2009 and 2010.  See Cost of Living Adjustments.  The benefit amount is rounded down to the nearest dime after the cost of living adjustment is applied.

C.   Computation of Retroactive Benefits

Plaintiff also challenges the SSA's calculation of his retroactive disability insurance benefits.  To qualify for disability insurance benefits, a claimant must satisfy a five-month waiting period.  See 42 U.S.C. § 423(c)(2).  In other words, a claimant, such as Plaintiff, who successfully qualifies as disabled is nonetheless not entitled to disability insurance benefits until

13

five months after the onset of that disability. See id. A claimant who eventually qualifies for disability insurance benefits is entitled to retroactive benefits from the time at which he first became entitled to benefits (that is, after the five-month waiting period) until the time at which he actually began to receive benefits. See 42 U.S.C. § 423(a)(1). However, under a Windfall Offset Provision, retroactive benefits are reduced by the amount of benefits collected by the claimant during the relevant time period that the claimant would not have been entitled to had he received his disability benefits. See 42 U.S.C. § 1320a-6(a). Essentially, if a claimant collects SSI during the period for which he now seeks retroactive disability benefits, and the claimant would not have been entitled to SSI if he had received his proper disability insurance benefits, his retroactive benefits are reduced by that amount. In addition, if the claimant is represented by an attorney, the SSA will pay that attorney out of the claimant's retroactive benefits. See 20 C.F.R. § 404.1730.

II. The ALJ's Decision

ALJ Greenberg, in his February 13, 2009 decision, determined that the SSA correctly calculated both Plaintiff's retroactive disability benefits and his monthly disability benefits. (See Rec. at 10.) First, the ALJ reviewed 42 U.S.C. § 415, which provides for the computation of primary disability insurance benefits. The

14

ALJ then described how the SSA calculated Plaintiff's disability insurance amount, his retroactive benefits, and the effect of the Windfall Offset Provision on his retroactive benefits.  The ALJ noted that Plaintiff has never disputed the accuracy of his earnings record, which provides the foundation for all benefit calculations.  (See Rec. at 11.)

The ALJ then went through the process of calculating Plaintiff's disability insurance benefits to ensure that the SSA had done the computation correctly.  The ALJ determined that Plaintiff's AIME would be calculated based off of thirty years of Plaintiff's earnings.  Taking Plaintiff's highest years of earnings from the elapsed years and applying the indexing ratios based off of a 2002 indexing year, the ALJ found that Plaintiff had total indexed earnings of $307,050.92.  (See Rec. at 12, 51-52.)  The ALJ then divided this amount by 360, the number of months in the 30 year time period, and found that Plaintiff's AIME was $852.00. (See id. at 12.)

The ALJ then used the statutory formula provided in § 415(a) and the 2004 bend points provided by the SSA to calculate Plaintiff's primary insurance amount.[4]  (See id. at 12.)  The ALJ

_____

[4] Specifically, the SSA determined that Plaintiff's primary insurance amount is equal to 90% of the first $612.00 of the AIME, 32% of the AIME over $612.00 and below $3,689.00, and 15% of the AIME above $3,689.00.  (See Rec. at 12.)  Based on

15

found that Plaintiff's primary insurance amount was equal to $627.60. The ALJ then applied cost of living adjustments, beginning in 2004, and for each year thereafter. The ALJ determined that the Administration had correctly applied the cost of living adjustments published each year by the Admimistration. The ALJ explained, "A careful review of the figures shown on the reconsideration determination shows that all of the cost of living adjustments and [Primary Insurance Amount] increases for additional earnings have been properly applied to the claimant's [Primary Insurance Amount] since January 2005." (Id. at 12.) The ALJ continued, "Accordingly, I find that the Social Security Administration computed the claimant's retroactive benefits for January 2005 through July 2005 correctly, . . . and that the Social Security Administration also computed the claimant's Primary Insurance Amount and monthly benefit correctly based on his earnings, date of birth, and month of entitlement to disability insurance benefits in accordances with the applicable provisions of th Social Security Act and Regulations."

III. Application

    A.   Review of the ALJ's Decision

---

Plaintiff's AIME of $852.00, the SSA correctly calculated that his monthly benefits were equal to 90% of $612.00, plus 32% of $240.00 ($612.00 x .90 + $240.00 x .32). Plaintiff did not have an AIME above $3,689.00.

1.    Substantial Evidence Supports the ALJ's Decision

Substantial evidence supports the ALJ's conclusions that Plaintiff's retroactive benefits and monthly benefits were correctly calculated. First, the record provides ample evidence that the earnings values used by the ALJ and the SSA in determining Plaintiff's monthly benefits were correct and based on the SSA's official earnings records for Plaintiff. (See Rec. at 72, 51-52.)

In addition, substantial evidence supports the ALJ's finding that the SSA correctly calculated Plaintiff's benefits. The SSA applied the statutory formulas provided in 42 U.S.C. § 415 to calculate Plaintiff's benefits and correctly determined that Plaintiff, who became disabled and attained age sixty-two after 1978, was to have his benefits computed according to the AIME method. (See Rec. at 10, 51.) The SSA correctly indexed Plaintiff's earnings using 2002 as the indexing year and determined that Plaintiff had average indexed monthly earnings of $852.00. (See Rec. at 51-52.) The SSA then calculated Plaintiff's primary insurance amount by applying the statutory formula for individuals who became disabled in 2004. (See Rec. at 12, 53.) This calculation yielded a primary insurance amount of $627.60. (See Rec. at 12, 53.) Finally, the SSA correctly applied cost of living adjustments to Plaintiff's primary insurance amount, determining that Plaintiff was entitled to monthly benefits of $644.00

17

beginning in January 2005.[5]   (See Rec. at 12.)   The SSA also
correctly applied the cost of living adjustments for 2005 and 2006
in December 2005 and December 2006, respectively. (See id. at 53.)

Furthermore, substantial evidence supports the ALJ's finding
that the SSA correctly calculated Plaintiff's retroactive benefits.
The SSA determined that Plaintiff was disabled as of July 22, 2004
and entitled to disability insurance benefits as of January 2005,
following the five-month waiting period.   (See Ex. C at 3.)
However, the SSA did not make this determination until July 2005,
and Plaintiff did not receive benefits until August 2005. (See Rec.
at 27-30.) Accordingly, Plaintiff was entitled to retroactive
disability insurance benefits from January 2005 to July 2005, which
the SSA correctly calculated to equal $4,508.00.

As required by statute, the SSA deducted Plaintiff's SSI
payment and attorneys' fees from this amount.   In June 2005,
Plaintiff received a SSI payment of $652.80 (see Rec. at 74, 61;
Compl. ¶ A9), which the SSA determined Plaintiff would not have
received had he received his disability insurance.   In addition, in
his initial application for disability benefits, Plaintiff was
represented by counsel.   Plaintiff entered a fee agreement with his
attorney, pursuant to 42 U.S.C. § 406(a)(2)(A), whereby his

---

[5] This amount is equal to 1.027 multiplied by $627.60,
rounded down to the nearest whole dollar.

attorney was entitled to a fee of 25% of past due benefits or $5,300.00, whichever is less. (<u>See</u> Ex. C.)  Here, the proper fee was $1,127.00, 25% of $4,508.00.[6]  The SSA correctly deducted Plaintiff's attorneys' fees and SSI payment from his retroactive benefits and determined that Plaintiff was entitled to $2,728.20 in retroactive benefits.  The SSA paid Plaintiff this amount on November 29, 2005.  (<u>See</u> Rec. at 61.)

### 2.  The ALJ Applied the Correct Legal Standards

In reviewing Plaintiff's monthly disability insurance benefits and retroactive benefits, the ALJ applied the correct legal principles and standards.  The ALJ properly determined that Plaintiff is entitled to benefit calculations pursuant to the AIME method.  <u>See</u> 20 C.F.R. § 404.204(a)-(c).  In calculating Plaintiff's AIME, the ALJ used the correct formulas as provided in 42 U.S.C. § 415.  (<u>See</u> Rec. at 10-11.)  Furthermore, the ALJ correctly calculated Plaintiff's retroactive benefits for the period from January 2005 to July 2005 and correctly deducted Plaintiff's SSI payment and attorneys' fees from this amount.

---

[6] Plaintiff claims that the attorneys' fee was wrongly deducted from his retroactive benefits.  (<u>See</u> Pl.'s Mot. at 5.)  Plaintiff argues that he did not have an attorney when he applied for SSI.  (<u>See</u> <u>id.</u>)  However, the attorneys' fee deducted from Plaintiff's retroactive benefits was for Plaintiff's attorney in his initial application for disability insurance in August 2004.  The record provides ample documentation that Plaintiff was represented during this process.  (<u>See</u> Ex. C.)

19

Nevertheless, Plaintiff claims that the SSA and the ALJ analyzed his application for benefits under the wrong statutory provisions.  Plaintiff references 42 U.S.C. § 415 and states that "[he is] not this section."   (See Pl.'s Mot. at 4.)  Plaintiff requests that the Court "grant [all my] benefits under sections [4]16(i) and [4]23."[7]   (Id.)

The SSA and the ALJ applied the correct statutory provision, 42 U.S.C. § 415, to calculate Plaintiff's benefits.  Section 415 provides the guidelines for calculating disability insurance for claimants who qualify for disability insurance based on their wage earnings history.  Section 416(i) defines "period of disability" and section 423 describes disability insurance benefits.  Section 423 specifically states, ". . . [an] individual's disability insurance benefit for any month shall be equal to his primary insurance amount for such month determined under section 415 . . ." 42 U.S.C. § 423(a)(2).  Neither section 416(i) nor section 423 provides a different method for calculating disability insurance benefits.  Accordingly, Plaintiff's claim that the ALJ and the SSA used incorrect statutory provisions to calculate his benefits is

---

[7] In his Complaint and motion for summary judgment, Plaintiff refers to sections 215, 216(i), and 223 of the Social Security Act, which correspond to sections 415, 416(i), and 423 of Title 42 of the U.S.C.

without merit.[8]

B.   Earnings Values

In his Complaint, Plaintiff contends that the SSA used incorrect earnings values when computing his AIME. (See Compl. ¶ A3.) Plaintiff has the burden of proving that the wage values used by the SSA were incorrect.   See Butts v. Sec'y of Human Services, 706 F.2d 107, 108 (2d Cir. 1983) (holding that a claimant seeking to disprove the SSA's wage records must "prove his case by a preponderance of the evidence"); Lyublinsky v. Barnhart, 360 F. Supp. 2d 497, 499-500 (E.D.N.Y. 2005) ("[P]laintiff has the burden of disproving the [SSA's wage] records by a preponderance of the evidence") (citations omitted).   Plaintiff has failed to meet this burden.

---

[8] Plaintiff's claim may arise from a misunderstanding about SSI and disability insurance.   As explained supra, while appealing the SSA's initial denial of his application for disability insurance, Plaintiff applied for and received SSI in the amount of $653.00.   (See Compl. ¶ A9; Pl.'s Mot. at 3.) Plaintiff's SSI ended when he was awarded disability insurance. Plaintiff seems to argue that his monthly disability insurance, which was initially for $644.00, should be for the same amount as the SSI he received.   (See Pl.'s Mot. at 3 ("I respectfully request[] [the] Court to review [the SSI] check [for] $653.00. . . . This amount is correct.   I am requesting [the] Court [to] order . . . my SSI check with [the] correct amount and all backpay.").)   However, Plaintiff is not entitled to SSI, and, as explained throughout this Report and Recommendation, Plaintiff's disability benefits were correctly calculated.   SSI is provided to individuals based on financial need and is not available to individuals, such as Plaintiff, who are entitled to, qualify for, and receive disability insurance.

Plaintiff provides no evidence of additional earnings nor any evidence that the ALJ used incorrect values when reviewing the SSA's calculation of his benefits.  The values used by the ALJ are consistent with those in Plaintiff's Earnings Record in his Social Security Statement.  (See Rec. at 102.)  The Social Security Commissioner's wage records, as reflected in the yearly Social Security Statements, are considered conclusive evidence of a claimant's wages if the claimant does not seek to correct the wage record within three years, three months, and fifteen days of receiving the yearly wage record.  See 42 U.S.C. § 405(c)(4).  Plaintiff never objected to his wage record, and, in his initial application for disability benefits, Plaintiff acknowledged that the SSA's record of Plaintiff's wages was correct.  (See Ex. C.)

Nevertheless, Plaintiff claims that between June 30, 2003 and June 30, 2004, the 12 months proceeding the onset of his disability, Plaintiff earned $19,271.00, entitling him to monthly disability insurance benefits of $1,194.00.[9]  (See Compl. ¶ A4.)  However, Plaintiff misinterprets the formulas for calculating disability insurance benefits.  In calculating disability insurance

---

[9] It appears that Plaintiff calculated the $19,271.00 amount by summing his 2003 and 2004 earnings.  It is unclear from the record whether Plaintiff's 2003 earnings reflect earnings prior to June 2003.  The Court is unable to determine how Plaintiff calculated the $1,194.00 monthly benefit amount.

benefits, a claimant's yearly wages are based on his yearly earnings for each *calendar year*, as reported to the SSA. See 42 U.S.C. § 415. Plaintiff cannot select any twelve consecutive month period to form the basis of his yearly earnings. Moreover, even if the SSA did adopt Plaintiff's suggestion that he earned $19,271.00 in 2003 or 2004, it would not significantly alter his benefits.[10] Plaintiff's benefits are calculated by his average indexed monthly earnings. Given Plaintiff's age, the year in which he became disabled, and his wage history, Plaintiff's average indexed monthly earnings were based on a thirty-year period. Plaintiff did not earn any wages for sixteen of those thirty years, which significantly reduced his AIME and his primary insurance amount. After a thorough review of the administrative record and the documents submitted by Plaintiff, this Court finds no evidence that the SSA used incorrect earnings values when calculating Plaintiff's AIME and his primary insurance value.

---

[10] For example, if $19,271.00 was substituted as Plaintiff's yearly earnings for 2003, Plaintiff's primary insurance amount would have been $630.56 — only three dollars more than what the formula yielded when the SSA used Plaintiff's actual yearly earnings for 2003, $8203.52. With an AIME of $630.56, Plaintiff would have been entitled to monthly benefits of $653.70 beginning in January 2005, after application of the 2004 cost of living adjustments. While the Court does not mean to minimize the difference several dollars can mean over the course of years, the error claimed by Plaintiff, which is not supported by the record, would have a relatively minor impact on his monthly benefits in contrast to the figure he advances of $1,194.00 per month.

23

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that Plaintiff's motion for summary judgment be denied, the Commissioner's motion for judgment on the pleadings be granted, and Plaintiff's action be dismissed with prejudice.[11]

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul G. Gardephe, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Gardephe. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 149-52, 106 S. Ct. 466, 472-73 (1985), reh'g denied, 474 U.S. 1111, 106 S. Ct. 899 (1986); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F.2d 298,

---

[11] On January 12, 2012, Plaintiff submitted an Affirmation requesting that the Court enter a default judgment against Defendant for failing to respond to Plaintiff's Motion for Summary Judgment. As Plaintiff's Motion for Summary Judgment was also labeled "Opposition to [Defendant's] Motion," entry of a default judgment is inappropriate.

24

300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992);

<u>Small v. Secretary of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d

Cir. 1989).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: January 27, 2012
       New York, New York

25